IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GARY GATES, *et al.,* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. H-02-0495 |
| vs. | § | JURY TRIAL REQUESTED |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| PROTECTIVE AND REGULATORY | § | |
| SERVICES, *et al.,* | § | |
| | § | |
| Defendants. | § | |

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS OF FORT BEND COUNTY CHILD ADVOCATES, INC., LINDA SHULTZ, AND PAULA GIBSON

---

OF COUNSEL:
Kelley M. Keller
TBA No. 11198240
Jonathan C.C. Day
TBA No. 24012513
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760

Charles W. Schwartz
TBA No. 17861300
VINSON & ELKINS L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas 77002-6760
Telephone: (713) 758-3852
Facsimile:  (713) 615-5504

**ATTORNEYS FOR DEFENDANTS FORT BEND COUNTY
CHILD ADVOCATES, INC., LINDA SHULTZ, AND PAULA GIBSON**



## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

   A.  The Parties. .................................................................................................................. 2

      1.  Child Advocates. .................................................................................................. 2

      2.  Linda Shultz and Paula Gibson. ....................................................................... 2

   B.  The Interviews. ........................................................................................................... 2

      1.  Travis Gates. ........................................................................................................ 2

      2.  Alexis Gates. ........................................................................................................ 3

      3.  Marcus and Derodrick Gates. ........................................................................... 3

III. ARGUMENT AND AUTHORITIES ............................................................................ 4

   A.  Plaintiffs Fail to State a Claim for Relief Against the Movants. ......................... 4

      1.  Plaintiffs' Claims Against Movants are Properly Claims Under 42 U.S.C. § 1983. ...... 4

      2.  Plaintiffs Fail to Identify Any Actionable Conduct by Movants. ................. 5

         a.  Shultz and Gibson. ...................................................................................... 5
         b.  Child Advocates. .......................................................................................... 6
         c.  No Respondeat Superior Liability. ............................................................ 8

      3.  Plaintiffs Fail to Plead a Conspiracy. ............................................................. 8

   B.  Movants Are Immune From Liability For Their Role, if any, in the Interviews. .............. 9

      1.  Public Policy and the Qualified Immunity. .................................................. 10

      2.  Application of the Qualified Immunity to Child Abuse Investigations. ...... 11

      3.  Movants Are Entitled to the Qualified Immunity. ....................................... 12

      4.  Plaintiffs Cannot Defeat the Defense of Qualified Immunity. .................... 15

   C.  Movants Are Entitled to Absolute Immunity. ..................................................... 20

   D.  Movants Are Entitled to the Eleventh Amendment Immunity. ......................... 20

IV. CONCLUSION ............................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Alton v. Texas A&M Univ.,*
    168 F.3d 196 (5th Cir. 1999)................................................................................. 8

*Anderson v. Creighton,*
    483 U.S. 635 (1987)........................................................................................... 15

*Arnaud v. Odom,*
    870 F.2d 304 (5th Cir. 1989)................................................................................ 5

*Arsenaux v. Roberts,*
    726 F.2d 1022 (5th Cir. 1982)............................................................................. 9

*Bartell v. Loshiser,*
    215 F.3d 550 (6th Cir. 2000)........................................................... 12, 14, 15, 17

*Brown v. Lyford,*
    243 F.3d 185 (5th Cir. 2001)
    *cert. denied,* 122 S. Ct. 46 (2001) ......................................................... 10, 14, 15

*Burns-Toole v. Byrne,*
    11 F.3d 1270 (5th Cir. 1994).............................................................................. 16

*Callahan v. Lancaster-Lebanon Intermediate Unit 13,*
    880 F. Supp. 319 (E.D. Pa. 1994) ............................................................ 4, 5, 10, 15

*Calloway v. Boro of Glassboro Dept. of Police,*
    89 F. Supp.2d 543 (D. N.J. 2000) ..................................................................... 13

*Carroll v. Timmers Chevrolet, Inc.,*
    592 S.W.2d 922 (Tex. 1979).............................................................................. 9

*Champagne v. Jefferson Parish Sheriff's Office,*
    188 F.3d 312 (5th Cir. 1999)......................................................................... 8, 20

*Darryl H. v. Coler,*
    801 F.2d 893 (7th Cir. 1986)....................................................................... 11, 20

*Dayse v. Schuldt,*
    894 F.2d 170 (5th Cir. 1990)............................................................................. 9

*Delcourt v. Silverman,*
    919 S.W.2d 7772 (Tex. App. Houston [14th Dist.] 1996, writ denied).................... 20

*Deshawn E. v. Safir,*
    156 F.3d 340 (2d Cir. 1998).............................................................................. 19

*DeVargas v. Mason & Hanger-Silas Mason Co.,*
    844 F.2d 714 (10th Cir. 1988)........................................................................... 14

*Devereaux v. Perez,*
    218 F.3d 1045 (9th Cir. 2000)..................................................... 11, 12, 16, 19

*Doe v. Hennepin,*
   858 F.2d 1325 (8th Cir. 1988)................................................................................ 20

*Doe v. Louisiana,*
   2 F.3d 1412 (5th Cir. 1993)................................................................. 12, 17, 18

*Dolihite v. Maughon,*
   74 F.3d 1027 (11th Cir. 1996)............................................................................ 14

*Frazier v. Bailey,*
   957 F.2d 920 (1st Cir. 1992)......................................................... 13, 15, 17

*Goerlich v. Davis,*
   1991 WL 195772 (N.D. Ill.1991)..................................................................... 18

*Green v. Maraio,*
   722 F.2d 1013 (2nd Cir. 1983)........................................................................ 20

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) .................................................................. 10, 12, 15, 16

*Hatch v. Department for Children, Youth and Their Families,*
   274 F.3d 12 (1st Cir. 2001) ..................................................... 10, 11, 12

*Hodorowski v. Ray,*
   844 F.2d 1210 (5th Cir. 1988)..................................................................... passim

*J.B. v. Washington County,*
   905 F. Supp. 979,  (D. Utah 1995),
   *aff'd*, 127 F.3d 919 (10th Cir. 1997) ...................................................... 7, 11

*Kruse v. State of Hawaii,*
   857 F. Supp. 741 *aff'd* 68 F.3d 331 (1994)................................................. 20

*Landstrom v. Illinois Dept. of Children and Family Servs.,*
   892 F.2d 670 (7th Cir. 1990)...................................................... 16, 19, 20

*Lux v. Hansen,*
   886 F.2d 1064 (8th Cir. 1989)......................................................................... 14

*Lynch v. Cannatella,*
   810 F.2d 1363 (5th Cir. 1987)........................................................................... 9

*Malley v. Briggs,*
   475 U.S. 335 (1986) ........................................................................................ 10

*Manzano v. South Dakota Dept. of Social Servs.,*
   60 F.3d 505 (8th Cir. 1995)............................................................................. 12

*Mitchell v. Lealman Volunteer Fire Co.,*
   985 F. Supp. 1436 (M.D. Fla. 1996) .......................................................... 7, 15

*Monell v. Department of Social Servs.,*
   436 U.S. 658 (1978) .......................................................................................... 6

*Moses v. Parwatikar,*
   813 F.2d 891 (8th Cir. 1987)........................................................................... 20

*Oliver v. Scott,*
   276 F.3d 736 (5th Cir. 2002)..................................................................................5

*Richardson v. McKnight,*
   521 U.S. 399 (1997)............................................................................................13

*Ridlen v. Four County Counseling Center,*
   809 F. Supp. 1343 (N.D. Ind. 1992).....................................................................21

*Robison v. Via,*
   821 F.2d 913 (2d Cir. 1987)................................................................................20

*Saavedra v. City of Albuquerque,*
   859 F. Supp. 526 (D.N.M. 1994) .........................................................................15

*Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.,*
   435 S.W.2d 854 (Tex. 1968) .................................................................................9

*Sherman v. Four County Counseling Center,*
   987 F.2d 397 (7th Cir. 1993)........................................................................12, 16

*Sisk v. Levings,*
   868 F.2d 159 (5th Cir. 1989).................................................................................5

*Spiller v. City of Texas City,*
   130 F.3d 162 (5th Cir. 1997).................................................................................7

*Stehney v. Perry,*
   907 F. Supp. 806 (D.N.J. 1995) ..........................................................................18

*Stem v. Ahearn,*
   908 F.2d 1 (5th Cir. 1990)...............................................................7, 12, 16, 20

*Thomason v. SCAN Volunteer Servs., Inc.,*
   85 F.3d 1365 (8th Cir. 1996)...........................................................................8, 13

*Thompson v. Steele,*
   709 F.2d 381 (5th Cir. 1983).................................................................................8

*Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,*
   734 F.2d 730 (11th Cir. 1984)............................................................................20

*Venable v. Keever,*
   61 F. Supp.2d 552 (N.D. Tex. 1999)...................................................................13

*Warner v. Grand County,*
   57 F.3d 962 (10th Cir. 1995)........................................................................13, 14

*Watterson v. Page,*
   987 F.2d 17 (1st Cir. 1993) ............................................................................5, 17

*Wilkinson v. Russell,*
   182 F.3d 89 (2d Cir. 1999)............................................................................12, 17

*Wyatt v. Cole,*
   504 U.S. 158 (1992)............................................................................................13

*Young v. Biggers,*
   938 F.2d 565 (5th Cir. 1991)..................................................................................5, 9

## Statutes

42 U.S.C. § 1983 ...........................................................................................passim

TEX. FAM. CODE § 261.302...............................................................................7

TEX. FAM. CODE § 264.409...............................................................................15

Defendants Fort Bend County Child Advocates, Inc. ("Child Advocates"), Linda Shultz ("Shultz"), and Paula Gibson ("Gibson") (collectively referred to as "Movants") file this brief in support of their Motion to Dismiss.

## I. INTRODUCTION

Child Advocates is a not-for-profit organization, working on behalf of abused, neglected, and abandoned children in Fort Bend County.  Child Advocates briefly interviewed four minor children of Gary and Melissa Gates (the "Gateses") at the request of the Texas Department of Protective and Regulatory Services, Children's Protective Services ("CPS") in connection with two CPS investigations of suspected child abuse.  The first investigation led to an action to terminate the Gateses' parental rights, to which the Gateses responded with a request for sanctions.  That request for sanctions apparently was merely a prelude to this attempt to retaliate against 27 individuals and 6 entities for their roles, if any, in the child abuse investigations.  Despite a 13-page "fact" recitation, Plaintiffs' Complaint fails to allege any action by Shultz or Gibson, much less, action upon which a claim for relief could be granted.  Similarly, the Complaint fails to identify any alleged unconstitutional policy or procedure of, or act by, Child Advocates upon which a claim for relief could be granted.  However, even if Plaintiffs had identified conduct by Shultz or Gibson or policy or custom of Child Advocates, the brief interviews of the Gateses' children at Child Advocates' facility are protected by an immunity that enables the non-profit organization, its employees, and volunteers, to perform under what are most often emotionally charged, volatile, and delicate circumstances, without the potentially disabling effects of threatened litigation.

1

## II. BACKGROUND

### A.   The Parties.

#### 1.   Child Advocates.

Child Advocates operates the Child Advocacy Center (the "<u>Center</u>") in Richmond, Texas. The non-profit Center was established and operates pursuant to Chapters 261 and 264 of the Texas Family Code.[1] Employees and volunteers at the Center work closely with CPS, frequently conducting video-taped interviews of suspected victims of child abuse and potential witnesses at the request of CPS.

Plaintiffs' complaint against Child Advocates, Shultz, and Gibson rests upon interviews conducted at the Center of:  (1) Travis Gates ("<u>Travis</u>"), on February 11, 2000, (2) Alexis Gates ("<u>Alexis</u>"), on January 25, 2001; (3) Marcus Gates ("<u>Marcus</u>"), on February 5, 2001; and (4) Derodrick Gates ("<u>Derodrick</u>"), on February 5, 2001 (collectively, the "<u>Interviews</u>").  *See* Plaintiffs' First Amended Complaint (the "<u>Complaint</u>") at ¶¶ 95, 96(a).

#### 2.   Linda Shultz and Paula Gibson.

Shultz was the executive director of Child Advocates.  Shultz also served on the organization's board of directors.  Gibson is a Child Advocates volunteer.  Plaintiffs do not allege that either Shultz or Gibson conducted or participated in the Interviews.

### B.   The Interviews.

#### 1.   Travis Gates.

On February 11, 2000, a CPS agent interviewed Travis at his school following a report to CPS of suspected physical and/or emotional abuse.  At the conclusion of that interview, the CPS agent brought Travis to the Center for a second, video-taped interview.  Complaint at ¶ 28.  The

---

[1]    Chapter 261 addresses reporting and investigation of suspected child abuse, and Chapter 264 addresses the creation and operation of children's advocacy centers.

Complaint does not describe Travis's interview at the Center or otherwise complain about the manner in which it was conducted. Rather, Plaintiffs appear to challenge only the fact that it was conducted at all. *Id.*

The CPS investigation initiated by Travis's in-school interview continued with the temporary removal later that day of all 13 of the Gateses' children and was followed by the filing of an action to terminate the Gateses' parental rights. Complaint at ¶¶ 44-51. The Complaint does not identify or complain of any acts or omissions by Child Advocates, the Center, Shultz, or Gibson in connection with the removal of the children or the subsequent termination action.

### 2.   Alexis Gates.

On January 25, 2001, following receipt of a report of alleged suspected abuse of Alexis, a CPS agent transported Alexis from school and took her to the Center for an interview. Complaint at ¶ 59. Plaintiffs allege that Alexis was "filmed and interrogated" at the Center, where she told investigators she bruised her cheek on a bed headboard while playing with her brothers Marcus and Derodrick. *See* Complaint at ¶ 59. The Complaint does not describe the interview further or complain about the manner in which it was conducted.

### 3.   Marcus and Derodrick Gates.

Following the interview of Alexis, CPS agents sought to interview Alexis's family members. When the Gateses refused the request, CPS petitioned for an order from the Fort Bend County District Court directing the interview of the Gateses' family members. Complaint at ¶ 59. A Child Advocates employee then interviewed Marcus and Derodrick pursuant to court order. *Id.* at ¶¶ 59-60.

Plaintiffs complain that Derodrick and Marcus were shown "material offensive to the boys" during their interviews, asked "questions about their 'private parts,'" and that Derodrick "refused to participate in this exercise, finding it offensive and 'nasty.'" Complaint at ¶ 60.

3

According to Plaintiffs, the interviewer was unable to obtain information suggesting abuse, "and both boys were returned to Mr. and Mrs. Gates." *Id.*

III. ARGUMENT AND AUTHORITIES

**A.    Plaintiffs Fail to State a Claim for Relief Against the Movants.**

Of the 14 claims asserted in the Complaint, Plaintiffs direct only the following three against the Movants:

(1)    <u>Interference with family relationships</u>. Complaint at ¶ 73. Plaintiffs contend that Movants interfered with Plaintiffs' family relationships "without due process of law, in violation of [Plaintiffs] rights under the Fourteenth Amendment." This claim is directed against all three Movants and others.

(2)    <u>Violation of "federally protected rights."</u> Complaint ¶¶ 94-95. Plaintiffs assert that Child Advocates "violated [Travis's and Alexis's] right to be protected from unlawful search and seizure, as well as [their] right to not be deprived of [their] liberty without due process of law" and violated Marcus's and Derodrick's "federally protected rights." This claim is brought under 42 U.S.C. § 1983 and is directed against Child Advocates only.

(3)    <u>Conspiracy.</u>  Complaint at ¶ 96(a). Plaintiffs contend that Movants conspired with the other defendants to intentionally "interrogate and video-tape" Travis, Alexis, Marcus, and Derodrick "without due process of law or probable cause, thus unreasonably depriving them of their liberty without due process of law." This claim is directed against all three Movants and others.

Plaintiffs fail to allege any facts that, even if taken as true, could support these claims.

**1.    Plaintiffs' Claims Against Movants are Properly Claims Under 42 U.S.C. § 1983.**

Section 1983 is not itself a source of substantive rights. Rather, it provides only a mechanism for vindicating other federal rights. *Callahan v. Lancaster-Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 327 (E.D. Pa. 1994). Under Section 1983, plaintiffs may assert federal claims for: (1) deprivation by state officials of the protections defined in the Bill of Rights; (2) substantive due process claims for "arbitrary, wrongful government actions;" and (3) procedural due process claims relating to "deprivations of life, liberty, or property without due

4

process of law." *Callahan*, 880 F. Supp. at 327. *See also Arnaud v. Odom*, 870 F.2d 304, 307 (5th Cir. 1989) (Section 1983 provides a remedy for the deprivation of rights "secured by the Constitution and laws of the United States by persons acting under color of state law.") (quotation omitted).

Although only one of the three claims against Movants is purportedly brought under 42 U.S.C. § 1983,[2] each assert violations of civil rights, and are therefore Section 1983 claims in substance. *See id.*

### 2.   Plaintiffs Fail to Identify Any Actionable Conduct by Movants.

A plaintiff in a section 1983 action must show: (1) the existence of a federal constitutional or statutory right; and (2) "some deprivation of that right as a result of defendants' actions under color of state law." *Watterson v. Page*, 987 F.2d 1, 7 (1st Cir. 1993). Noticeably absent from the Complaint are any factual allegations to reflect that an alleged deprivation of rights *resulted from the actions of the Movants*.

### a.   Shultz and Gibson.

A plaintiff suing officials in their individual capacities[3] for civil rights violations faces a heightened pleading standard. *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *Young v. Biggers*, 938 F.2d 565, 569-70 (5th Cir. 1991). Accordingly, the plaintiff must allege "specific conduct giving rise to a constitutional violation." *Oliver*, 276 F.3d at 741. *See also Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir. 1989) (To state a claim against an individual in the person's individual capacity, a plaintiff "may not merely plead conclusory allegations, but must instead

---

[2]    Although the only claim Plaintiffs identify as a Section 1983 claim is brought solely against Child Advocates, the Plaintiffs identify Shultz and Gibson as having acted under the color of law, an element of a Section 1983 action, reflecting an intent to pursue Shultz and Gibson under Section 1983. *See* Complaint at ¶ 17.

[3]    Plaintiffs sue Shultz and Gibson in both their official and individual capacities. Complaint at ¶ 13.

set forth specific facts, which if proven, would warrant the relief sought."). Plaintiffs have not done this. In fact, Plaintiffs have not alleged *any* conduct by Shultz or Gibson.

The Complaint states that Shultz and Gibson acted in their capacity as employees of Child Advocates "under color of law, following policies and customs of" Child Advocates. Complaint at ¶ 17. However, the Complaint fails to identify what, if anything, Shultz or Gibson did. Neither is mentioned even once in the Complaint's "Facts" section. Neither Shultz nor Gibson are identified as having interviewed any of the Gateses' children. Neither is identified as having ordered, authorized, or participated in any aspect of the two child abuse investigations or Interviews. In fact, neither Shultz nor Gibson are mentioned at all after their introduction on page 3, until 17 pages later, at paragraph 73, and then only for the conclusory allegation that the (never identified) "deliberately indifferent acts" of Shultz, Gibson, and 31 other Defendants proximately resulted in the deprivation of the Plaintiffs' familial relationship rights. Eight pages later, Shultz and Gibson are included in the following global conspiracy allegation: "All of the defendants in this lawsuit, acting in their individual and official capacities and under color of law, having conspired together and with others, reached a mutual understanding to accomplish a purpose and acted to undertake a course of conduct that violated plaintiffs' civil rights." Complaint at ¶ 96. Plaintiffs have not met their standard of pleading to assert a claim against either Shultz or Gibson in their individual capacity.

> **b.    Child Advocates.**

To state a claim against Child Advocates, Plaintiffs must show that their alleged deprivation of rights resulted from official custom or policy of Child Advocates. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978) (holding that a government agency cannot be sued under Section 1983 for injury inflicted by its employees or agents, unless the injury results from execution of that agency's official policy); *J.B. v. Washington County*, 905 F.

Supp. 979, 984 (D. Utah 1995), *aff'd*, 127 F.3d 919 (10th Cir. 1997); *Mitchell v. Lealman Volunteer Fire Co.*, 985 F. Supp. 1436, 1440 (M.D. Fla. 1996) ("To be actionable, the alleged constitutional deprivation must result directly from a policy implemented or practiced by the local government.").

Although Plaintiffs assert in their "interference" claim that they were deprived of their rights "as a proximate result of established policies and customs *of CPS* and *Fort Bend County*," they never identify those alleged policies and customs, or more specifically, identify any unconstitutional policies or practices *of Child Advocates*.[4]

In fact, Plaintiffs cannot contend that Child Advocates exercised any unconstitutional policies or customs.   The authority to investigate child abuse arises from Texas statutes "designed to address an alarming state wide problem of maltreatment of children."   *Stem v. Ahearn*, 908 F.2d 1, 5 (5th Cir. 1990).   Child Advocates operates under the authority established in Chapter 261 and 264 of the Texas Family Code.   Pursuant to TEX. FAM. CODE § 261.302, child abuse investigations may include "an interview with and examination of the subject child, which may include a medical, psychological, or psychiatric examination."   The interview may be "conducted at any reasonable time and place" and may include "transporting the child for purposes relating to the interview or investigation."   TEX. FAM. CODE § 261.302(b).   Plaintiffs do not contend that Child Advocates exceeded its authority in any manner.   Aside from the allegation that Marcus and Derodrick found the interviews to be offensive, there are no

---

[4]     Plaintiffs' sole reference to a "policy" of Child Advocates is made in connection with their introduction of Shultz and Gibson, in which Plaintiffs contend that the two individual defendants followed "policies and customs of" Child Advocates. Complaint at ¶ 17. This type of conclusory allegation cannot support a claim against Child Advocates. *See Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (rejecting pleading that a party was "'acting in compliance with the municipality's customs, practices or procedures'" as insufficient and conclusory).

allegations of coercion, threats, or abuses exercised by or as a policy of Child Advocates.[5] As will be discussed below, courts have refused to find constitutional violations on much stronger allegations than offensive questions during a child abuse investigation, and certainly not on a simple complaint that an interview was conducted at all.

### c.   No Respondeat Superior Liability.

Plaintiffs cannot rely on their allegations related to the actions of any other parties for their claims against Shultz, Gibson, or Child Advocates as there is no vicarious liability under Section 1983. *See Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999) ("subordinates' acts trigger no individual § 1983 liability"). "Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." *Alton*, 168 F.3d at 200. *See also Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."); *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1370 (8th Cir. 1996) (affirming summary judgment in favor of director of volunteer services program in the absence of any evidence that the individual defendant was personally or directly involved in the alleged violation of the plaintiffs' constitutional rights or that the defendant "knew about the allegedly unlawful conduct and facilitated, approved, condoned, or deliberately ignored the conduct.").

### 3.   Plaintiffs Fail to Plead a Conspiracy.

A civil conspiracy is a "combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means." *Carroll v. Timmers Chevrolet,*

---

[5]   Although Plaintiffs complain that the interviews of Derodrick and Marcus were obtained on the basis of false representations to the court, there is no allegation that Movants are responsible for such representations.

*Inc.*, 592 S.W.2d 922, 925 (Tex. 1979). *See also Schlumberger Well Surveying Corp. v. Nortex Oil and Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968). "One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of." *Schlumberger*, 435 S.W.2d at 857. Rather, there must be a "meeting of the minds" on the object or course of action. *Schlumberger*, 435 S.W.2d at 857.

Plaintiffs pleading a conspiracy under the civil rights statutes "must plead the operative facts upon which their claim is based." *See also Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). "Bald allegations that a conspiracy existed are insufficient." *Id.* at 1370. Accordingly, plaintiffs must allege facts that show that the defendants agreed to commit an illegal act. *See Dayse v. Schuldt*, 894 F.2d 170 (5th Cir. 1990); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) ("To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."). Plaintiffs' allegations of a conspiracy are insufficient.

As noted above, Plaintiffs fails to plead *any* action or inaction by Shultz or Gibson, much less any action that could suggest their participation in a conspiracy to commit an illegal act, or any action in pursuit of a conspiracy by Child Advocates. Rather, Plaintiffs' allegations against Shultz, Gibson, and Child Advocates are no more than impermissible "bald" allegations and cannot support a conspiracy claim. *See Lynch*, 810 F.2d at 1370; *Young*, 938 F.2d at 569.

**B.    Movants Are Immune From Liability For Their Role, if any, in the Interviews.**

Even had Plaintiffs identified conduct by Movants sufficient to state a claim for relief, Movants would nonetheless be immune from liability in a civil action.

1.      **Public Policy and the Qualified Immunity.**

Public officers are protected from civil liability when sued in their individual capacity in connection with their performance of "discretionary functions," "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The United States Supreme Court in *Harlow* noted the need for an immunity to shield public officers "from undue interference with their duties and from potentially disabling threats of liability," noting that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" 457 U.S. at 806, 819 (citation omitted).

This immunity will be evaluated based on "the objective *legal* reasonableness of the defendant's actions in light of existing case law." *Callahan*, 880 F. Supp. at 335 (original emphasis, quotation omitted). As such, the immunity "gives ample room for mistaken judgments, by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001) (quotation omitted), *cert. denied*, 122 S. Ct. 46 (2001). *See also Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988) (quoting *Malley v. Briggs*, 475 U.S. 335 (1986)) ("This more limited immunity provides 'ample protection to all but the plainly incompetent or those who knowingly violate the law.'"); *Callahan*, 880 F. Supp. at 327 (quotation omitted) (the immunity is applicable "even where officials of reasonable competence could disagree that such acts were objectively reasonable."); *Hatch v. Department for Children, Youth and Their Families*, 274 F.3d 12, 19 (1st Cir. 2001) ("the doctrine of qualified immunity provides a safe harbor for a wide range of mistaken judgments."). Under this standard, individual defendants may maintain their immunity even if

they have violated a plaintiff's constitutional rights. *See, e.g., Darryl H. v. Coler*, 801 F.2d 893, 907 (7th Cir. 1986).

### 2.      Application of the Qualified Immunity to Child Abuse Investigations.

Federal courts have repeatedly recognized the sensitivity of and emotionally-charged nature of child abuse investigations and the threat of litigation that necessarily follows.  As the Ninth Circuit noted:

> There can be no question that an investigation of suspected or reported child sexual molestation may be extremely difficult.  Inherent in any child sexual abuse investigation lurks the task of law enforcement and child welfare personnel to navigate through a cauldron of intense emotions, hidden motives, devastating accusations and counter-accusations, and conflicting and recanted statements.  To repose in such officials the heavy burden of fairly and effectively investigating such cases at the risk of incurring personal damage liability under § 1983 should the manner of the investigation not conform to an abstract constitutional standard will undoubtedly have a chilling effect on those charged with investigating and detecting child sexual abuse.

*Devereaux v. Perez*, 218 F.3d 1045, 1054 (9th Cir. 2000).  Similarly, the First Circuit, noted the exigency attendant child abuse investigations, explaining that:

> [T]he government has a compelling interest in safeguarding children that it suspects are victims of abuse and in acting quickly on their behalf.  We live in an era in which case workers operate under enormous pressure, confronted with the necessity of making on-the-spot judgments on the basis of limited and often conflicting information.  Circumstances frequently force them to make difficult choices without time for extensive investigation.  When presented with evidence of apparent child abuse, a case worker must have a fair amount of leeway to act in the interest of an imperiled child—and it is better to err on the side of caution than to do nothing and await incontrovertible proof.

*Hatch*, 274 F.3d at 22. *See also J.B.*, 905 F. Supp. at 986 ("The government, as *parens patriae*, holds a compelling interest in the safety and welfare of the children . . . In keeping with the flexible requirements of procedural due process, considerable deference should be given to the judgment of responsible government officials in acting to protect children from perceived danger or abuse.").

Accordingly, courts consistently apply the qualified immunity pronounced in *Harlow* in the context of child abuse investigations. *See, e.g., Doe v. Louisiana*, 2 F.3d 1412, 1416 (5th Cir. 1993) ("Child care workers are entitled to qualified immunity in the performance of discretionary, nonprosecutorial functions."); *Stem*, 908 F.2d at 5; *Hodorowski*, 844 F.2d at 1216; *Hatch*, 274 F.3d at 20; *Devereaux*, 218 F.3d at 1051; *Bartell v. Loshiser*, 215 F.3d 550, 557 (6th Cir. 2000) ("Decisions pertaining to the welfare of a child, which may . . . result in the termination of the natural bond between parent and child, require the deliberate and careful exercise of official discretion in ways that few public positions can match. The necessity that this delicate process not be over-burdened with encumbering litigation comports entirely with . . . the purposes of qualified immunity protection."); *Wilkinson v. Russell*, 182 F.3d 89 (2d Cir. 1999), *cert. denied*, 120 S.Ct. 1160 (2000); *Manzano v. South Dakota Dept. of Social Servs.*, 60 F.3d 505, 510 (8th Cir. 1995) (recognizing that the plaintiff's rights "were clearly disrupted," but that it was not clear that the disruption was caused by "unreasonable or unconstitutional actions of state officials.").

Therefore, child protective service workers will not be personally liable for damages in a civil action, unless the plaintiff can "pierce the qualified immunity that [the officials] inherently enjoy by demonstrating that the workers breached 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Stem*, 908 F.2d at 5 (quoting *Harlow*, 457 U.S. at 818).

### 3.    Movants Are Entitled to the Qualified Immunity.

Policy justifications underlying the doctrine of qualified immunity for government officials may apply with equal force to private actors in the exercise of discretion in their discharge of government imposed duties. *See Sherman v. Four County Counseling Center*, 987 F.2d 397, 405-06 (7th Cir. 1993) (extending qualified immunity to a private hospital detaining a

patient and performing a psychiatric evaluation pursuant to a court order).[6]   Accordingly, numerous courts have afforded private actors the qualified immunity under circumstances similar to those presented here.   For example, in *Frazier v. Bailey*, 957 F.2d 920 (1st Cir. 1992), the First Circuit affirmed application of the qualified immunity to employees of an agency similar to Child Advocates in connection with their role in investigating allegations of child abuse, finding the employees to be the "functional equivalent of public officials."   957 F.2d at 929.   As in this case, the defendants in *Frazier*, through their respective private agencies, were under contract to perform duties statutorily required of the state.   *Id.* at 928.   *See also Thomason*, 85 F.3d at 1373, n.6 (recognizing applicability of the qualified immunity to not-for-profit corporation authorized by the state to investigate allegations of suspected child abuse).

Similarly, the Tenth Circuit extended qualified immunity to the director of a crisis center in *Warner v. Grand County*, 57 F.3d 962 (10th Cir. 1995).   The crisis center director was enlisted by police to conduct a strip search of female detainees, who then sued claiming the searches violated their constitutional rights.   However, because the director "assumed the role of a state

---

[6]   Though more recent opinions from the U.S. Supreme Court have declined to apply the qualified immunity to certain private actors (*see, e.g., Wyatt v. Cole*, 504 U.S. 158 (1992) (private party invoking state replevin statute) and *Richardson v. McKnight*, 521 U.S. 399 (1997) (private guards employed by *for profit* prison management firm), the denials have been limited to the context in which they arose and would not preclude application of the qualified immunity in the appropriate context.   *See Venable v. Keever*, 61 F. Supp.2d 552, 561 (N.D. Tex. 1999) (acknowledging that private actors "may be entitled to qualified immunity when they act pursuant to a government contract or court order") (citing *Warner v. Grand County*, 57 F.3d 962, 965-67 (10th Cir. 1995); *Calloway v. Boro of Glassboro Dept. of Police*, 89 F. Supp.2d 543, 558 n.21 (D. N.J. 2000) (distinguishing *Richardson* as limited to its context and holding that interpreter for police was entitled to the qualified immunity).   In the present case, Child Advocates, its employees, and volunteers are performing an exclusively public function, traditionally afforded immunity, under contract with the state.   Denying the not-for-profit entity the immunity enjoyed by those at whose direction Child Advocates performed the Interviews would adversely affect an important government concern – unwarranted timidity – the effect of which could be devastating to the interests of the State and of Child Advocates, which relies heavily on a volunteer network for its viability.

actor when conducting the searches," the court held that she was entitled to the same qualified immunity that would protect the officer that enlisted the director's help. *Warner*, 57 F.3d at 965. The court held that "a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself." *Warner*, 57 F.3d at 967.

> If Ms. Parker, or others like her, are not permitted to raise the shield of qualified immunity, they might reject requests to aid state officials in performing governmental functions. This would clearly constrain state officials' agility in performing such functions, frustrate the government's investigatory power, and thereby limit the state's ability to service the public good.

*Warner*, 57 F.3d at 967. *See also Bartell*, 215 F.3d at 557 ("[B]ecause of the closely monitored, non-profit interrelationship between [the Michigan Family Independence Agency] and [Lutheran Social Services of Michigan], we hold that the [Lutheran Social Services of Michigan] defendants may assert qualified immunity.").

Other contexts in which courts have recognized the applicability the qualified immunity to private actors include: (1) private investigators working with police (*Brown*, 243 F.3d at 190); (2) physicians under contract with a state (*Dolihite v. Maughon*, 74 F.3d 1027, 1044-45 (11th Cir. 1996) ("Because [physicians under contract with the state] are individuals subject to liability under § 1983, the psychiatrists are also entitled to raise qualified immunity as a defense to liability")); (3) mental health counselor at private facility working in "joint participation with public officials" (*Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989)); (4) private corporation under contract with a state (*DeVargas v. Mason & Hanger-Silas Mason Co.*, 844 F.2d 714, 721-22 (10th Cir. 1988) ("when private party defendants act in accordance with the duties imposed by a contract with a governmental body, perform a governmental function, and are sued solely on the basis of those acts performed pursuant to contract, qualified immunity is proper.")

14

(footnote omitted)); (5) contract personnel hearing officer for city fire department (absolute immunity) (*Saavedra v. City of Albuquerque*, 859 F. Supp. 526, 531 (D.N.M. 1994) ("It matters not whether the person occupying the public office is employed by independent contract, but whether the policy rationales behind absolute immunity apply."); and (6) private, nonprofit corporation, serving as county volunteer fire company (*Mitchell*, 985 F. Supp. at 1439-40).

In working with CPS, under contract with the State of Texas, Shultz, Gibson, and Child Advocates are entitled to the protection of a qualified immunity.[7] *See Frazier*, 957 F.2d at 931-32 ("Because we find that [private individuals] Stevens and Flinker were entitled to a defense of qualified immunity as a matter of law, we find no basis for recovery against the agencies.").

### 4.    Plaintiffs Cannot Defeat the Defense of Qualified Immunity.

The application of the immunity is a threshold issue that should be addressed before discovery is allowed. *Harlow*, 457 U.S. at 818. Therefore, the court may decide the issue of qualified immunity as a matter of law on a motion to dismiss. *See Anderson v. Creighton*, 483 U.S. 635, 646, n.6 (1987) ("[W]e have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation."). "This approach allows for the elimination of 'meritless actions against public officials at the earliest possible stage in the litigation.'" *Callahan*, 880 F. Supp. at 326 (quoting *Mitchell v. Forsyth*, 472 U.S. 511 (1985)).

The first inquiry on a challenge to a defendant's qualified immunity, is whether the defendant has violated a "clearly established" constitutional or statutory right. If so, then the court must determine whether the defendant acted "objectively unreasonably in light of the clearly established right." *Bartell*, 215 F.3d at 557. *See also Brown*, 243 F.3d at 189 ("To overcome the qualified immunity of government officials, Brown must show 1) a constitutional

---

[7]    Child Advocates operates pursuant to a contract with the Office of the Attorney General of the State of Texas, executed under the authority granted by the TEX. FAM. CODE § 264.409.

violation; 2) of a right clearly established at the time the violation occurred; and 3) that the defendant actually engaged in conduct that violated the clearly established right.").

Plaintiffs bear the burden of showing that "the underlying [constitutional] right was clearly established at the time of the alleged misconduct." *Devereaux*, 218 F.3d at 1051. *See also Burns-Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994) ("The burden is on the plaintiff to overcome a defendant's defense of qualified immunity."); *Landstrom v. Illinois Dept. of Children and Family Servs.*, 892 F.2d 670, 675 (7th Cir. 1990).[8] *See also Stem*, 908 F.2d at 5 ("[T]he applicable law that binds the conduct of officeholders must be clearly established at the very moment that the allegedly actionable conduct was taken."). To meet this burden, Plaintiffs must allege "specific facts with a level of particularity so that they would, if proved, warrant the relief" they seek. *Burns-Toole*, 11 F.3d at 1274.

The Complaint outlines the following constitutional claims:

- **Interference with family relationship** – "[P]laintiffs were deprived of their right to the services, consortium, companionship, comfort, and support of their children/parents/siblings without due process of law, in violation of their rights under the Fourteenth Amendment to the United States Constitution to live together as a family." Complaint at ¶ 73.

- **Unlawful search and seizure and deprivation of liberty without due process** – In interviewing Travis and Alexis, Child Advocates violated the minors' "right to be protected from unlawful search and seizure," and the "right to not be deprived of . . . liberty without due process of law." Complaint at ¶ 95.

- **"Federally protected rights"** – Plaintiffs contend that in the interviews of Marcus and Derodrick, the interviewer asked about "sexually explicit matters, using offensive materials, based on a fraudulently-obtained order resulting from a small bruise on someone's face" and "violated the boys' federally protected rights." Complaint at ¶ 95.

---

[8]    "Whether a constitutional right is clearly established is a question of law." *Sherman*, 987 F.2d at 407. *See also Harlow*, 457 U.S. at 818 ("On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.").

These allegations fail to identify a "clearly established constitutional right" sufficient to avoid the qualified immunity.

**Familial rights.**  Far from alleging clearly defined rights, Plaintiffs rely primarily on the "amorphous" liberty interest in the familial relationship.  *See Frazier*, 957 F.2d at 931.  "It is not sufficient for a plaintiff to allege an abstract due process liberty interest in family relationships." *Id.* at 930.  Because "this interest must always be balanced against the governmental interest involved, it is difficult, if not impossible, for officials to know when they have violated 'clearly established' law."  *Id.* at 931.  There is no clearly established authority that could put Child Advocates, its employees, and its volunteers on notice that simply conducting interviews in the course of a child abuse investigation could violate any familial rights.  In fact, there *is no constitutional or statutory familial right to be free of interviews by child protective service workers* on the suspicion or report of suspected abuse.  *See Watterson*, 987 F.2d at 8 ("The right to family integrity clearly does not include a constitutional right to be free from child abuse investigations.").

"[E]ven a faulty investigation does not necessarily rise to the level of an unconstitutional investigation."  *Wilkinson*, 182 F.3d at 106.  Faced with allegations of faulty or abusive investigations, absent here, courts consistently affirm that "the State's interest in a child's well-being may supersede that of a parent."  *Bartell*, 213 F.3d at 558.  *See also Doe v. Louisiana*, 2 F.3d at 1416-17 ("While the Supreme Court has recognized that parents have an abstract liberty interest in the care and management of their children, the Court has never found that interest to be absolute or unqualified.").

For example, in *Hodorowski*, the Fifth Circuit affirmed the qualified immunity of child protective service workers on a complaint that the workers removed children from their home

without a court order, finding that the defendants could not have known that their conduct violated "the nebulous right of family integrity." *Hodorowski*, 844 F.2d at 1217. According to the Court, "[i]t is beyond dispute that many aspects of family integrity possess constitutional stature. But reasonable government officials, knowing only that they must not infringe on family integrity, would not necessarily know just what conduct was prohibited." *Id.*

Similarly, in *Doe v. Louisiana*, the Fifth Circuit concluded that child protective services case workers that had children physically examined for signs of sexual abuse "would not have known that their efforts to fulfill their public responsibility in determining whether sexual abuse occurred violated a constitutional right." *Doe*, 2 F.3d at 1420. Even allegations of malice and wrongdoing cannot "transform the liberty interest in family integrity into a clearly established constitutional right." *Id.* at 1418, n.13.

**Search and seizure.** Movants did not "search" or "seize" Travis or Alexis. Rather, the children were brought to the Center by CPS workers and were merely interviewed at the facility. The interviews alone cannot constitute an unlawful search and seizure as a matter of law. *See Stehney v. Perry*, 907 F. Supp. 806, 823 (D.N.J. 1995) (finding that a polygraph is not a "search" and that "both"'questions, however unfriendly,' simply 'do not constitute an unreasonable search' as a matter of law.") (quoting *Goerlich v. Davis*, 1991 WL 195772, at *4 (N.D. Ill.1991)).

**Due process.** "An important consideration in deciding whether an official violated clearly established law is the generality of the statement of the relevant rule." *Hodorowski*, 844 F.2d at 1216. The Fifth Circuit notes that "many general constitutional rights, such as the right to due process of law, are clearly established and yet so general that it often will be unclear whether particular conduct violates the right." *Hodorowski*, 844 F.2d at 1216-17. In this case,

a violation of that right.[9]  This claim, again, apparently rests solely on the fact that the children were interviewed.  However, there is no due process right that these interviews be conducted in any particular manner.  *See Devereaux*, 218 F.3d at 1053.

The plaintiff in *Devereaux* complained that the interview techniques used by the defendants in a child abuse case were improper and resulted in false accusations against the plaintiff.  *Devereaux*, 218 F.3d at 1053.  According to the plaintiff, the defendants "'coerced or threatened child witnesses, secreted alleged victims from those who would question the credibility of their accounts, and influenced alleged child victims in order to fabricate evidence,'" in violation of the plaintiff's Fourteenth Amendment rights.  *Id.*  Nonetheless, the court concluded that there was no constitutional due process right to have child witnesses in a sexual abuse investigation interviewed in a particular manner or pursuant to a certain protocol.  *Id.*  If the manner could not even implicate a due process right, the interview itself could not.

The Seventh Circuit in *Landstrom* examined a similar claim of a constitutional right in the context of interviews at school by school personnel and a family service worker of two minor children suspected of child abuse.  During one of the interviews, the child was asked to remove her dress and the school nurse removed the child's underpants and examined the child's body.  Subsequent interviews were conducted with the children alone over the parents' objections.  In upholding the application of the qualified immunity to these facts, the court noted that the Eighth, Fifth, and Second Circuits "have specifically found public employees engaged in child

---

[9]       To the extent Plaintiffs' reference to the children's "due process" or "federally protected" rights refers to their rights under the Fifth and Fourteenth Amendments, Plaintiffs have failed to state a claim for relief.  "The due process clause of the Fourteenth Amendment prohibits self-incrimination based on fear, torture, or any other type of coercion."  *Deshawn E. v. Safir*, 156 F.3d 340, 348 (2d Cir. 1998).  "The challenged conduct must be the 'kind of misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States.'"  *Deshawn E.*, 156 F.3d at 348.  There are no allegations of such misbehavior.

19

abuse investigations entitled to qualified immunity from § 1983 claims similar to plaintiffs' count I claims in the face of substantially greater intrusions than at issue here." *Landstrom*, 892 F.2d at 678.[10]

**C.      Movants Are Entitled to Absolute Immunity.**

Movants are further entitled to an absolute immunity for their role, if any, in the interviews of Marcus and Derodrick, as they were conducted pursuant to an order of the state district court. *See, e.g., Delcourt v. Silverman*, 919 S.W.2d 777, 782 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (applying judicial immunity to persons acting pursuant to authority of the court); *Green v. Maraio*, 722 F.2d 1013, 1018 (2nd Cir. 1983) (court reporter entitled to absolute immunity for action take pursuant to judge's instructions); *Moses v. Parwatikar*, 813 F.2d 891, 892 (8th Cir. 1987) (confirming absolute immunity applicable to psychiatrist appointed by the court to conduct a competency examination).

**D.      Movants Are Entitled to the Eleventh Amendment Immunity.**

The claims against Child Advocates and against Gibson and Shultz in their official capacity are barred by the Eleventh Amendment. *See Stem*, 908 F.2d at 3-4; *Champagne*, 188 F.3d at 313 ("The Eleventh Amendment bars citizens' suits in federal courts against States and their alter egos."); *Kruse v. State of Hawaii*, 857 F. Supp. 741, 751, *aff'd* 68 F.3d 331 (1994); *Tuveson v. Florida Governor's Council on Indian Affairs, Inc.*, 734 F.2d 730, 734 (11th Cir. 1984) (finding that incorporated council created by executive order of the governor was entitled to Eleventh Amendment immunity as a state agency); *Darryl H.*, 801 F.2d at 906 (suit for prospective money damages brought against officials in their official capacity is prohibited by the Eleventh Amendment); *Ridlen v. Four County Counseling Center*, 809 F. Supp. 1343, 1358

---

[10]      Citing *Hodorowski*, 844 F.2d at 1217-18; *Doe v. Hennepin*, 858 F.2d 1325, 1329-30 (8th Cir. 1988); and *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987).

(N.D. Ind. 1992) (noting that private hospital and its officers (in their official capacity), if determined to be "state actors" would be immune from liability under the Eleventh Amendment).

## IV. CONCLUSION

Movants respectfully request that this Court dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

Charles W. Schwartz
State Bar No. 17861300
Vinson & Elkins L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas  77002-6760
(713) 758-3852
(713) 615-5504 [Fax]
***Attorneys for Fort Bend Child Advocates,
Inc., Linda Shultz, Individually, and Paula
Gibson, Individually***

OF COUNSEL:
Kelley M. Keller
State Bar No. 11198240
Jonathan C.C. Day
State Bar No. 24012513
Vinson & Elkins L.L.P.
2300 First City Tower
1001 Fannin Street
Houston, Texas  77002-6760

22

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Motion to Dismiss has been furnished to all parties listed below by U. S. First-Class Mail, on this 15th day of April, 2001:

William G. Harger
Hoover & Harger, P.C.
12946 Dairy Ashord, Suite 200
Sugar Land, Texas  77478
*Attorney for Plaintiffs*

Chris Branson
2205 Avenue I, #117
Rosenberg, Texas  77471
*Attorney for Plaintiffs*

Terrence L. Thompson
Office of Attorney General
P. O. Box 12548
Austin, Texas 78711-2548

Texas Dept. of Protective &
    Regulatory Services
Thomas Chapmond, Executive Director
701 West 51st Street
Austin, Texas  78751

Mary R. Reveles
Assistant County Attorney
Fort Bend County
301 Jackson, Suite 621
Richmond, Texas  77469-3108
*Attorney for Kathryn M. Holton,*
*John F. Healey, Jr., the District*
*Attorney's Office of Fort Bend County,*
*Texas, Fort Bend County, Texas and its*
*Sheriff's Department Defendants*

Christopher B. Gilbert
Bracewell & Patterson LLP
711 Louisiana Street, Suite 2900
Houston, Texas  77001-2781
*Attorneys for Lamar Consolidated*
*Independent School District, Marcia*
*Vogelsang, Cynthia Brown, Karen Kleine,*
*and Judy O'Neal*

Erika Davis
Sherrece Haywood
Lisa Matthews
Laurel Miller
Amy Odin
Sandra Russell
Karen Sheehan
1110 Avenue G
Rosenberg, Texas  77471

Bessie Smith
Korsey Smith
700 West Palm
P. O. Box 450318
Fresno, Texas  77245

*Chas. Schwaldt*

Charles W. Schwartz

808337_4.DOC

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Brief in Support of Motion to Dismiss Fort Bend County Child Advocates, Inc., Linda Shultz, and Paula Gibson has been furnished to all parties listed below by U. S. First-Class Mail, on this 15th day of April, 2001:

William G. Harger
Hoover & Harger, P.C.
12946 Dairy Ashord, Suite 200
Sugar Land, Texas  77478
*Attorney for Plaintiffs*

Chris Branson
2205 Avenue I, #117
Rosenberg, Texas  77471
*Attorney for Plaintiffs*

Terrence L. Thompson
Office of Attorney General
P. O. Box 12548
Austin, Texas 78711-2548

Texas Dept. of Protective &
    Regulatory Services
Thomas Chapmond, Executive Director
701 West 51st Street
Austin, Texas  78751

Mary R. Reveles
Assistant County Attorney
Fort Bend County
301 Jackson, Suite 621
Richmond, Texas  77469-3108
*Attorney for Kathryn M. Holton,
John F. Healey, Jr., the District
Attorney's Office of Fort Bend County,
Texas, Fort Bend County, Texas and its
Sheriff's Department Defendants*

Christopher B. Gilbert
Bracewell & Patterson LLP
711 Louisiana Street, Suite 2900
Houston, Texas  77001-2781
*Attorneys for Lamar Consolidated
Independent School District, Marcia
Vogelsang, Cynthia Brown, Karen Kleine,
and Judy O'Neal*

Erika Davis
Sherrece Haywood
Lisa Matthews
Laurel Miller
Amy Odin
Sandra Russell
Karen Sheehan
1110 Avenue G
Rosenberg, Texas  77471

Bessie Smith
Korsey Smith
700 West Palm
P. O. Box 450318
Fresno, Texas  77245

_____
Charles W. Schwartz

808337_4.DOC

23